Mail after recording to:
BRAD A. BRODIE
P.O. Box 519
Aiken, SC 29802

EXHIBIT

A

WHEN RECORDED, MAIL TO
S.C. State Federal Credit Union
P.O. Box 726
Columbia, SC 29202

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# REVOLVING CREDIT MORTGAGE

THIS MORTGAGE CONTAINS A DUE-ON-SALE PROVISION AND SECURES INDEBTEDNESS UNDER A CREDIT AGREEMENT WHICH PROVIDES FOR A REVOLVING LINE OF CREDIT AND MAY CONTAIN A VARIABLE RATE OF INTEREST.

THIS MORTGAGE ("Security Instrument") is made on July 8, 2010                                    , The Mortgagor is

Carolina T. Bates a/k/a Carolina James

("Borrower"). The Mortgagee is _____ S.C. State Federal Credit Union _____, duly chartered and existing under the laws of The State of South Carolina _____, whose address is 800 Huger St.                    Columbia, SC 29201-3620
("Lender").

WHEREAS, Borrower is indebted to Lender as described in this paragraph;
TO SECURE to Lender:
(1) The repayment of all indebtedness due and to become due under the terms and conditions of the LOANLINER Home Equity Plan Credit Agreement and Truth-in-Lending Disclosures made by Borrower and dated the same day as this Security Instrument, and all modifications, amendments, extensions and renewals thereof (herein "Credit Agreement"). Lender has agreed to make advances to Borrower under the terms of the Credit Agreement, which advances will be of a revolving nature and may be made, repaid, and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Credit Agreement (not including finance charges thereon at a rate which may vary from time to time, and any other charges and collection costs which may be owing from time to time under the Credit Agreement) shall not exceed Seventy Thousand Dollars And No Cents
($ 70,000.00 ). That sum is referred to herein as the Maximum Principal Balance and referred to in the Credit Agreement as the Credit Limit. On the Final Payment Date, 25 years from the date of this Security Instrument, the entire indebtedness under the Credit Agreement, if not paid earlier, is due and payable.
(2) The payment of all other sums advanced in accordance herewith to protect the security of this Security Instrument, with finance charges thereon at a rate which may vary as described in the Credit Agreement.
(3) The performance of Borrower's covenants and agreements under this Security Instrument and under the Credit Agreement.
BORROWER does hereby mortgage, grant and convey to Lender the following described property located in the County of Aiken            , State of South Carolina:

See exhibit "A" attached hereto and incorporated herein by reference.

2010016083
MORTGAGE
RECORDING FEES            $13.00
PRESENTED & RECORDED:
07-15-2010    08:30 AM
JUDITH WARNER
REGISTER OF MESNE CONVEYANCE
AIKEN COUNTY, SC
By: MARILYN SEIGLER DEPUTY
BK:RB 4315
PG:1662-1668

which has the address of     420 Old Walnut Branch
                                                    (Street)
North Augusta                                    , South Carolina 29860        (herein "Property Address");
(City)                                                                                  (Zip Code)

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2002 ALL RIGHTS RESERVED

ESC996 (LASER)

TO HAVE AND TO HOLD unto lender and lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property."

Complete if applicable:
This Property is part of a condominium project known as NA
_____.
This Property includes Borrower's unit and all Borrower's rights in the common elements of the condominium project.
This Property is in a Planned Unit Development known as _____.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Finance Charges and Other Charges.** Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in the Credit Agreement.

2. **Funds for Taxes and Insurance.** Subject to applicable law, Lender, at Lender's option, may require Borrower to pay to Lender on the day monthly payments of principal and finance charges are payable under the Credit Agreement, until all sums secured by this Security Instrument are paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance and flood insurance, if applicable, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 22 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Credit Agreement and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, second, (in the order Lender chooses) to any finance charges, other charges and collection costs owing, and third, to the principal balance under the Credit Agreement.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Except to the extent that any such charges or impositions are to be paid to Lender under paragraph 2, Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any. Within five days after any demand by Lender, Borrower shall exhibit to Lender receipts showing that all amounts due under this paragraph have been paid when due.

ESC996 (LASER)

TO HAVE AND TO HOLD unto lender and lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property."

Complete if applicable:
This Property is part of a condominium project known as  NA

This Property includes Borrower's unit and all Borrower's rights in the common elements of the condominium project.
This Property is in a Planned Unit Development known as _____.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Finance Charges and Other Charges.** Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in the Credit Agreement.

2. **Funds for Taxes and Insurance.** Subject to applicable law, Lender, at Lender's option, may require Borrower to pay to Lender on the day monthly payments of principal and finance charges are payable under the Credit Agreement, until all sums secured by this Security Instrument are paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance and flood insurance, if applicable, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 22 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Credit Agreement and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, second, (in the order Lender chooses) to any finance charges, other charges and collection costs owing, and third, to the principal balance under the Credit Agreement.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Except to the extent that any such charges or impositions are to be paid to Lender under paragraph 2, Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any. Within five days after any demand by Lender, Borrower shall exhibit to Lender receipts showing that all amounts due under this paragraph have been paid when due.

ESC996 (LASER)

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," floods, and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. Unless Lender in writing requires otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy, and the amount of coverage shall be no less than the Maximum Principal Balance plus the full amount of any lien which has priority over this Security Instrument.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. All insurance proceeds are hereby assigned to Lender and shall be paid to Lender to the extent of all sums secured by this Security Instrument, subject to the terms of any mortgage, deed of trust or security agreement with a lien which has priority over this Security Instrument. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restore or repair the Property, if it is economically feasible to do so.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrowers shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrowers' obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and the constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. Any amounts disbursed by Lender pursuant to this paragraph 7, with finance charges thereon, at the rate provided in the Credit Agreement, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder. Any action taken by Lender under this paragraph shall not cure any breach Borrower may have committed of any covenant or agreement under this Security Instrument. Borrower agrees that Lender is subrogated to all of the rights and remedies of any prior lienor, to the extent of any payment by Lender to such lienor.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, to the extent of any indebtedness under the Credit Agreement, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 21 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Credit Agreement, (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Security Instrument, (b) is not personally

ESC996 (LASER)

liable under the Credit Agreement or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations or amendments with regard to the terms of this Security Instrument or the Credit Agreement, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Credit Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Credit Agreement which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Credit Agreement are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Prior Mortgage or Deed of Trust; Modification; Future Advance.** Borrower shall not enter into any agreement with the holder of any mortgage, deed of trust or other security agreement which has priority over this Security Instrument by which that security agreement is modified, amended, extended, or renewed, without the prior written consent of the Lender. Borrower shall neither request nor accept any future advance under a prior mortgage, deed of trust, or other security agreement without the prior written consent of Lender.

**15. Borrower's Copy.** Borrower shall be furnished a copy of the Credit Agreement and of this Security Instrument at the time of execution or after recordation hereof.

**16. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower may enter into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**17. Waiver of Homestead Exemption.** To the extent permitted by law, Borrower hereby waives the benefit of the homestead exemption as to all sums secured by this Security Instrument.

**18. Waiver of Statutes of Limitation.** To the extent permitted by law, Borrower hereby waives statutes of limitation as a defense to any demand or obligation secured by this Security Instrument.

**19. Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**20. Notice of Transfer of the Property; Advances after Transfer.** Borrower shall give notice to Lender, as provided in paragraph 12 hereof, prior to any sale or transfer of all or part of the Property or any rights in the Property. Any person to whom all or part of the Property or any right in the Property is sold or transferred also shall be obligated to give notice to Lender, as provided in paragraph 12 hereof, promptly after such transfer.

Even if Borrower transfers the Property, Borrower will continue to be obligated under the Credit Agreement and this Security Instrument unless Lender releases Borrower in writing. As a condition to Lender's consent to any proposed transfer or as a condition to the release of Borrower, Lender may require that the person to whom the Property is transferred sign an assumption agreement satisfactory to Lender and Lender may impose an assumption fee. The assumption agreement will not entitle the person signing it to receive advances under the Credit Agreement.

**21. Transfer of the Property.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

If Lender exercises the option to accelerate, Lender shall give Borrower notice of acceleration in accordance with paragraph 12 hereof. The notice shall provide a period of not less than 30 days from the date of the notice within which Borrower may pay the sums declared due. If Borrower fails to pay those sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 22 hereof.

**22. Default, Termination and Acceleration; Remedies.** Each of the following events shall constitute an event of default ("event of default") under this Security Instrument: (1) Borrower commits fraud or makes a material misrepresentation in connection with this Security Instrument or the Credit Agreement; (2) Borrower does not meet the repayment terms of the Credit Agreement; or (3) Borrower's action or inaction adversely affects the Lender's rights in the Property secured by this Security Instrument. If an event of default occurs, then prior to exercising any right or remedy provided for in this Security Instrument and prior to acceleration, Lender shall give notice as provided in paragraph 12 hereof and as required by applicable law. The notice shall specify: (a) the event of default; (b) the action required to cure the event of default; (c) a date, not less than twenty days (or any

ESC996 (LASER)

longer period required by applicable law) from the date the notice is given to Borrower by which the event of default must be cured; (d) that failure to cure the event of default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding, and sale of the Property; and (e) any other information required by applicable law. The notice shall further inform Borrower of the right to reinstate after acceleration, if applicable, and the right to assert in the foreclosure proceeding the nonexistence of an event of default or any other defense of Borrower to acceleration and sale. If the event of default is not cured on or before the date specified in the notice, Lender, at Lender's option, without further notice or demand, may declare default, may declare all sums secured by this Security Instrument to be immediately due and payable, and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 22, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports, all of which shall be additional sums secured by this Security Instrument.

23. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which would then be due under this Security Instrument and the Credit Agreement had no acceleration occurred; (b) cures all other events of default under this Security Instrument and the Credit Agreement; (c) pays all reasonable expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 21.

24. **Release.** This Security Instrument secures a revolving line of credit and advances may be made, repaid, and remade from time to time, under the terms of the Credit Agreement. When according to the terms of the Credit Agreement, no more advances will be made, and Borrower has paid all sums secured by this Security Instrument (or earlier if required by applicable law), this Security Instrument shall become null and void and Lender shall discharge this Security Instrument. To the extent permitted by law, Lender may charge Borrower a fee for such discharge and require Borrower to pay costs of recordation, if any.

ESC996 (LASER)

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

X _[signature]_  
_Brad A Brodie_  
Witness

X _[signature] Amanda Steward Smith_  
_Amanda Steward Smith_  
Witness

X _[signature]_ (Seal)  
Carolina T. Bates a/k/a Carolina James    Borrower

X _____ (Seal)  
Borrower

X _____ (Seal)  
Borrower

X _____ (Seal)  
Borrower

### ACKNOWLEDGMENT

STATE OF SOUTH CAROLINA, Aiken County ss:

Before me personally appeared _Amanda Steward Smith_ and made oath that _she_ saw the within named Borrower sign, seal, and as _their_ act and deed, deliver the within written Security Instrument; and that _she_ with _Brad A. Brodie_ witnessed the execution thereto.

Sworn before me this _8th_ day of _July_, _2010_.

_[signature]_ (Seal)  
Notary Public for South Carolina

NOTARY SIGNATURE _[signature]_

WITNESS SIGNATURE _[Amanda Steward Smith signature]_

My commission expires: _10-17-2017_

[Notary Seal: BRAD A. BRODIE, NOTARY PUBLIC, SOUTH CAROLINA, My Commission Expires 10-17-2017]

ESC996 (LASER)

## EXHIBIT "A"

ALL that lot or parcel of land with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, City of North Augusta, being shown and designated as **Lot 1, Block B, Section One-C, Walnut Grove Subdivision** on a plat recorded in the Office of the RMC of Aiken County, South Carolina, in plat Book 37, page 60; reference is hereby made to said plat for a more complete and accurate description as to the exact metes, bounds, dimensions and location of said property.

This being the same property conveyed to Carolina T. Bates by Deed of Forrest L. Harley and Mary B. Harley dated March 1, 2005 and recorded in Deed Book 2497 at page 108, in the Office of the RMC for Aiken County, South Carolina.

Tax Map No.: 010-09-02-134

**SCU STATE CREDIT UNION***
PO Box 726, 800 Huger Street, Columbia, SC 29202
800-868-8740    www.scscu.com    803-343-0300

**LOANLINER**
HOME EQUITY SYSTEM



# HOME EQUITY LINE OF CREDIT(maximum 85% LTV)

HOME EQUITY ADDENDUM

This Addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement and Truth in Lending Disclosure.

| OPENING DATE | MATURITY DATE | CREDIT LIMIT | ACCOUNT NUMBER |
|---|---|---|---|
| 07/13/2010 | 7/13/2035 | $70,000.00 | |

| BORROWER NAME AND ADDRESS | | ADDRESS OF PROPERTY SECURING ACCOUNT |
|---|---|---|
| Carolina James<br>420 Old Walnut Branch Rd<br>North Augusta, SC 29860 | Tony A James<br>420 Old Walnut Br<br>North Augusta, SC 29860 | 420 Old Walnut Branch<br>North Augusta, SC 29860 |

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|
| 3.25 % | 1.000 % | 4.250 % | 0.011644 % |

SCHEDULE OF CLOSING COSTS:

| DESCRIPTION | AMOUNT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| Appraisal Fee | $ | Closing Fee | $ |
| Credit Report Fee | $ | Title Search Fee | $ |
| Application Fee | $ | Title Exam Fee | $ |
| Flood Determination Fee | $ | Document Prep Fee | $ |
| Title Insurance | $ | Recording Fee | $ |

**PAYMENT INFORMATION:** You can obtain credit advances for 10 years. This period is called the "draw period." At our option, we may renew or extend the draw period. After the draw period ends the repayment period will begin. The length of the repayment period will depend upon the balance at the time of the last advance you obtain before the draw period ends but will not exceed 15 years. You will be required to make monthly payments during the draw and repayment periods. Your payment will be based on the current annual percentage rate at the time of advance as follows:

**Annual Percentage Rate 8% or less:** The monthly payment will be 1% of the loan balance as of the date of the last loan advance.
**Annual Percentage Rate 8.25%-12%:** The monthly payment will be 1.25% of the loan balance as of the last loan advance.
**Annual Percentage Rate 12.25%-15%:** The monthly payment will be 1.50% of the loan balance as of the last loan advance.
**Annual Percentage Rate 15.25%-18%:** The monthly payment will be 1.75% of the loan balance as of the last loan advance.

We will recalculate your payment each time you obtain an advance. If the interest rate increases or decreases such that your annual percentage rate is in a different range as shown above, your payment will be recalculated using the applicable payment percent based on the loan amount after your most recent advance. If the interest rate increases, but is not in a different range as shown above, you will be required to make more payments of the same amount. Your payment will include any amounts past due and any amount by which you have exceeded your credit limit, and all other charges. Your payment will never be less than the smaller of $100.00, or the full amount you owe.

**TRANSACTION REQUIREMENTS:** The minimum credit advance that you can receive is $100.00 for the first advance and $100.00 for each subsequent advance.

**PERIODIC RATE AND CORRESPONDING ANNUAL PERCENTAGE RATE:** We will determine the periodic rate and the corresponding annual percentage rate as follows. We start with an independent index, (the "Index"), which is the <u>Wall Street Journal</u> Prime Rate. When a range of rates has been published, the highest rate will be used. We will use the most recent index value available to us as of 10 days before the date of any annual percentage rate adjustment. To determine the periodic rate that will apply to your account, we add a margin, as disclosed above, to the value of the Index. If the rate is not already rounded we then round up to the next .25%. Then we divide this sum by the number of days in a year (365). To obtain the annual percentage rate we will multiply the periodic rate by the number of days in a year (365). This result is the annual percentage rate.

The annual percentage rate can change quarterly on the first day of January, April, July and October. The rate cannot increase or decrease more than 1 percentage point at each adjustment. The maximum

© CUNA MUTUAL INSURANCE SOCIETY, 1992,1999 ALL RIGHTS RESERVED   *Trade name for S.C. State Federal Credit Union

SPECIAL EAD002 201061 (C201061AD) 06/02/2010

**ANNUAL PERCENTAGE RATE** that can apply is 18% or the maximum permitted by law, whichever is less.

OTHER CHARGES:

    Over the Credit Limit Fee: We will charge your account $20.00 each month if you request an advance that exceeds your credit limit.

    Non-Sufficient Funds Charge: We will charge your account $30.00 if we return a home equity sharedraft for insufficient funds.

    Late Charges: If I am more than fourteen (14) days late on any payment, you will charge me a late charge that is 5% of each late installment or the maximum amount authorized by applicable law.

COLLECTION COSTS: You promise to pay, subject to applicable law, all costs of collecting what you owe under this agreement. This includes but is not limited to reasonable attorney fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

CHECK ACCESS: We may authorize you to obtain credit advances by writing checks on your home equity account. We reserve the right not to honor a check in the following circumstances:
(a) Your Credit Limit has been or would be exceeded by paying the check.
(b) Your check is post-dated. If a post-dated check is paid and as a result any other check is returned or not paid, we are not responsible.
(c) Your checks have been reported lost or stolen. You should notify us at once if your checks are lost or stolen.

(d) Your check is not signed by an "Authorized Signer", which means a person who signed this Agreement, or has signed a separate signature card for the account.
(e) Your account has been terminated or suspended as provided in this Agreement.
(f) The amount of your check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement.

If we pay any check under these conditions, you must repay us for the amount of the check and any charges permitted by law. The check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in the Agreement is not wrongful dishonor. We may not return the checks along with your periodic statements; however, your use of a check will be reflected on your periodic statement as a credit advance. We do not "certify" checks drawn on your account.

SIGNATURES:

| | | |
|---|---|---|
| Borrower 1 Carolina James | | 7/8/2010 Date |
| Borrower 2 Tony A. James | | 7/8/2010 Date |
| Witness | | 7/8/2010 Date |



© CUNA MUTUAL INSURANCE SOCIETY, 1992, 1999 ALL RIGHTS RESERVED

SPECIAL EAD002  201061  (C201061AD)  06/02/2010

# SC STATE CREDIT UNION

| SC State Credit Union<br>800 Huger Street<br>Columbia, South Carolina 29201<br>803-343-0300<br>800-868-8740 | **Home Equity Line of Credit**<br>(Maximum 85% LTV)<br>**SPECIAL ADDENDUM TO**<br>**CREDIT AGREEMENT AND REGULAR ADDENDUM**<br>( Special/Introductory Rate Plan effective through December 31, 2010) |
|---|---|

This Special Addendum is an integrated part of your Home Equity Credit Agreement and Truth-in-Lending Disclosure, and Regular Addendum which are incorporated together by reference. Except as set forth herein, this special rate is offered as a special promotion for qualified borrowers who open new Home Equity Line of Credit plans during the promotion period Beginning March 1, 2010. No ending date for the promotion has yet been established. To determine the ending date of the promotion, contact the Credit Union at the numbers above). Other borrowers with existing plans that already have a credit balance may obtain the special rate by increasing their Home Equity Line of Credit limit as set forth herein.

| SPECIAL / INTRODUCTORY RATE: | ANNUAL PERCENTAGE RATE* | DAILY PERIODIC RATE* |
|---|---|---|
| | 3.9% | 0.0106849% |
| THE CURRENT RATE THAT WOULD APPLY WITHOUT THE SPECIAL / INTRODUCTORY RATE: | The Index Rate, Margin and ANNUAL PERCENTAGE RATE are set forth below. | |

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE* | DAILY PERIODIC RATE* |
|---|---|---|---|
| 3.25% | 1.00% | 4.25% | 0.0116438% |

These rates are initial rates under the Plan and reflect the Introductory ANNUAL PERCENTAGE RATE, which is effective until December 1, 2010 on your Home Equity Line of Credit. The Index Rate and Margin Added to Index were not used to calculate the Introductory ANNUAL PERCENTAGE RATE. These terms are subject to change as set forth in this Addendum.

STATEMENT OF CLOSING COSTS DUE AT CLOSING.

| DESCRIPTION: | AMOUNT: | DESCRIPTION: | AMOUNT: |
|---|---|---|---|
| 1. Normal closing costs paid by SC State Credit Union | $0.00 | 1. _____ | $_____ |
| 2. _____ | $_____ | 2. _____ | $_____ |
| 3. _____ | $_____ | 3. _____ | $_____ |
| 4. _____ | $_____ | 4. _____ | $_____ |

SPECIAL RATE // INTRODUCTORY RATE: The annual percentage rate set forth above is discounted, which means that it is not based on the index and margin used for later rate adjustments. The initial rate will be in effect until **December 31, 2010** on your Home Equity Line of Credit. Thereafter, the annual percentage rate will change on the first day of the next quarter as described in the regular addendum to the Home Equity System. The annual percentage rate may change again on the first day of *the next quarter* and quarterly thereafter as described in the regular addendum to the Home Equity System. The special ANNUAL PERCENTAGE RATE is 3.9% with a corresponding Daily Periodic Rate of _0.0106849%_. If the special rate did not apply, an ANNUAL PERCENTAGE RATE of _4.25_% with a corresponding Daily Periodic Rate of _0.0116438%_ would have been applied under the Plan.

Members with existing Plans: Members with existing Plans with SC State Credit Union who otherwise qualify for the Special Rate Plan described herein, may obtain the Special Rate for their existing Plan by meeting the conditions herein on or prior to the ending date to be determined as explained herein above, as to existing and future account balances, subject to the terms and conditions set forth herein. To obtain the Special Rate, existing members must refinance their existing SCU Home Equity Line of Credit and increase their credit limit by at least $10,000.00 from their credit limit as of their date of application. Participation is subject to approval, appraisal and such other conditions as the Credit Union may require.

ACKNOWLEDGEMENT OF RECEIPT: By signing below, I/we acknowledge receipt of this Special Addendum.

_____    6-11-10
Borrower                                          Date

_____    6-11-10
Borrower                                          Date



**STATE CREDIT UNION** *
PO Box 726, 800 Huger Street, Columbia, SC 29202
800-868-8740    www.scscu.com    803-343-0300

**LOANLINER**®



## CREDIT INSURANCE

You can protect your financial future by signing up for **voluntary** credit insurance below. Enroll by simply indicating your preference in the "Credit Insurance Application" section below. Your credit union will be happy to explain the various insurance options and coverage. The cost is reasonable.

**CUNA MUTUAL GROUP**
*CUNA Mutual Insurance Society*
P.O. Box 391 · 5910 Mineral Point Road
Madison, WI 53701-0391
Phone: 800/937-2644

### CREDIT INSURANCE ENROLLMENT FORM AND SCHEDULE

"You" or "Your" means a person who is borrowing from the credit union. A co-signer is not eligible for coverage.

Credit insurance **is voluntary and not required in order to obtain this loan.** You may select any insurer of your choice. You can get this insurance only if you are eligible for the coverage and check "yes" below to select coverage and sign your name and write in the date. The rate you are charged for the insurance is subject to change. You will receive written notice before any increase goes into effect. You have the right to stop this insurance by notifying your credit union in writing. Your signature below means you agree that:

- If you elect insurance, you authorize the credit union to add the charges for insurance to your loan each month.

- You are eligible for disability insurance only if you are working for wages or profit 25 hours a week or more on the date of any advance. If you are not, that particular advance will not be insured until you return to work. If you are off work only because of temporary layoff, strike or vacation, but soon to resume, you will be considered at work.

- You are eligible for insurance if you are not older than the maximum age for insurance.

- You are insured only for advances actually received by you. You are not insured for any unused credit which may be available to you.

**NOTE: THE INSURANCE CONTAINS CERTAIN BENEFIT MAXIMUMS, INCLUDING AN AGE MAXIMUM. THE INSURANCE ALSO CONTAINS CERTAIN BENEFIT EXCLUSIONS, INCLUDING A PRE-EXISTING CONDITION EXCLUSION.**

| YOU ELECT THE FOLLOWING INSURANCE | | | | | COST PER $100 OF YOUR MONTHLY LOAN BALANCE | |
|---|---|---|---|---|---|---|
| Credit Disability For Borrower #1 | ☐ YES ☒ NO | OR | Borrower #2 | ☐ YES ☒ NO BUT NOT BOTH | Single Credit Disability | $ .220 |
| | | | | | Joint Credit Disability | N/A |
| Credit Life For Borrower #1 | ☐ YES ☒ NO | | Borrower #2 | ☐ YES ☒ NO | Single Credit Life | $ .075 |
| | | | | | Joint Credit Life | $ .116 |

WAITING PERIOD: If you are totally disabled for more than  30  days, then the disability benefit will begin with the  1st  day of disability.

Borrower #1 Name  Carolina James                    Borrower #2 Name  Tony A James

Borrower #1 Date of Birth  ████████ 1963             Borrower #2 Date of Birth  ████████ 1961

| Group Policy Number | Account Number | INSURANCE MAXIMUMS | DISABILITY | LIFE |
|---|---|---|---|---|
| ██████ | ██████ | Maximum Monthly Total Disability Benefit | $ 1,100.00 | N/A |
| | | Maximum Insurable Balance Per Loan Account | $ 75,000.00 | $ 75,000.00 |
| Date of Issue of Certificate | Secondary Beneficiary (If you desire to name one) | Maximum Age for Insurance | 65 | 69 |
| | | Maximum Number of Monthly Disability Payments | 120 | N/A |
| July 8, 2010 | | Age for Insurance Termination | 66 | 70 |

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT:**
* **THE INSURANCE COVERAGE IS SUBJECT TO THE INSURANCE MAXIMUMS, INCLUDING THE AGE FOR INSURANCE TERMINATION, SHOWN ABOVE; AND**
* **YOU WANT THE COVERAGE(S) SELECTED, EVEN IF THE INSURANCE WILL TERMINATE DUE TO ONE OR MORE OF THESE MAXIMUMS BEFORE YOUR LOAN IS PAID OFF; AND**
* **YOU HAVE RECEIVED THE CERTIFICATE OF INSURANCE FOR THE COVERAGE(S) SELECTED.**

**PLEASE REFER TO YOUR CERTIFICATE FOR DETAILS OF YOUR COVERAGE.**

| X _/s/ Carolina James_ | 07/08/10 | _/s/ Tony A James_ | 07/08/10 |
|---|---|---|---|
| SIGNATURE OF BORROWER 1 | DATE | SIGNATURE OF BORROWER 2 | DATE |

CI-MP-EF-1199(SC)

© CUNA MUTUAL GROUP, 2000. ALL RIGHTS RESERVED

*Trade name for S.C. State Federal Credit Union

ISC702 (LASER)